UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| ALAN MICHAEL QUINTANILLA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ATEC STEEL, L.L.C., )<br>)<br>Defendant. )<br>)<br>_____ / | Case No.:2:19-cv-00033<br><br>Demand for Jury Trial |

## PLAINTIFF'S FIRST AMENDED COMPLAINT WITH DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, ALAN MICHAEL QUINTANILLA (hereinafter "Plaintiff" or "Quintanilla"), and files his First Amended Complaint against Defendant ATEC STEEL, L.L.C. (hereinafter "Defendant" or "ATEC"), and states the following:

### NATURE OF THE CLAIMS

1. This is an action for monetary damages, pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 et seq. (hereinafter "ADA"); the Texas Labor Code §§ 21.001 *et seq*; the Texas Labor Code §§ 451.001 *et seq*.; and Texas common law to redress Defendant's unlawful employment practices against Plaintiff, including Defendant's unlawful discrimination, harassment, retaliation against Plaintiff because of his disability, and Defendant's breach of its duty to use ordinary care in providing Plaintiff with a safe workplace leading to his unlawful termination.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under the ADA.

3. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law and the Texas Labor Code pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## THE PARTIES

5. Plaintiff, QUINTANILLA, is a citizen of the United States, and was at all times relevant, a citizen of the State of Texas, residing in Ellis County.

6. At all times relevant to this action, Plaintiff worked for Defendant on a job site located in Corpus Christi, Texas.

7. Defendant, ATEC, is a Kansas Limited Liability Company with its principal place of business in Baxter Springs, Kansas.

8. Defendant, ATEC is an industrial contractor that provides services across the United States, including the State of Texas, specializing in the design, fabrication, construction, and testing of field welded above ground storage tank construction.

9. Defendant is a covered employer under the ADA and the Texas Workforce Commission, Civil Rights Division.

2

## PROCEDURAL REQUIREMENTS

10. Plaintiff has complied with all statutory prerequisites to filing this action.

11. On October 17, 2017, Plaintiff dual-filed a claim with the Texas Workforce Commission, Civil Rights Division ("TWC"), and the Equal Employment Opportunity Commission ("EEOC"), against Defendants, satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e), based on disability discrimination and retaliation.

12. Plaintiff's EEOC charge was filed within three hundred days after the alleged unlawful employment practices occurred.

13. On November 8, 2018, the EEOC issued to Plaintiff a Notice of Rights.

14. This complaint was filed within ninety days Plaintiff's receipt of the EEOC's Notice of Rights.

## FACTUAL ALLEGATIONS

15. Plaintiff is disabled.

16. Plaintiff first began his employment with Defendant in May 2013 as a Bullganger. In March 2014, Plaintiff's grandfather fell ill and Plaintiff resigned to attend to his family's needs.

17. In July 2015, Defendant rehired Plaintiff as a Welder.

18. Plaintiff worked for Defendant in a variety of positions on multiple job sites across the United States. Plaintiff worked for Defendant in North Dakota before he and his work crew were transferred to the Magellan Midstream job site in Corpus Christi, Texas, where the events leading to his unlawful termination occurred.

19. Plaintiff was able to perform essential job functions.

20. Plaintiff's job duties included but were not limited to welding inside metal tanks where temperatures could reach anywhere between 400 to 600 degrees, climbing up and down

ladders and scaffolding, manual lifting, moving materials to accomplish specific welding tasks, operating cranes, and welding in a variety of horizontal and vertical positions.

21. Upon information and belief, Defendant was contractually obligated to Magellan Midstream to provide its employees with a safe work place while working on Magellan Midstream's job site and as such assumed the non-delegable duty to use ordinary care in providing a safe work place. In the alternative, as Plaintiff's employer, Defendant owed Plaintiff the non-delegable duty to use ordinary care in providing a safe work place.

21. Defendant breached its duty to provide its employees a safe work place when it only permitted employees to take limited and occasional five-minute breaks and one 30-minute lunch break at the Corpus Christi job site. Defendant did provide water, however, the water was stored on pallets kept in the direct sunlight causing the water to taste of chlorine and become undrinkable due to prolonged sun exposure. Further, the only place for Plaintiff and other employees to cool off during their infrequent breaks was a trailer located on site which was as hot inside as the temperature was outside - providing no relief.

22. On June 21, 2017, Defendant's breach of its duty to use ordinary care in providing its employees a safe work place caused Plaintiff to suffer a heat stroke while on the job. As Plaintiff was climbing up a ladder into the automatic welder he began experiencing crushing pain in his shoulders, a massive headache, and feeling light headed. Plaintiff attempted to catch his breath, but then experienced further chest pains, ringing in his ears, numbness and tingling all over his body and eventually lost consciousness. Plaintiff regained consciousness after a few minutes and simply sat still until a co-worker tied Plaintiff to the "fall protection" and he descended the ladder where he was helped back onto to the ground where Defendant was notified of his injury.

Plaintiff's notification to Defendant of his on-the-job injury served as an affirmative step towards instituting a workers' compensation proceeding.

23. Despite knowing Plaintiff had lost consciousness, Defendant failed to summon an ambulance or other medical assistance for Plaintiff. Instead, Defendant shut down the job site and after a period of time dismissed all employees for the day.

24. On June 22, 2017, Plaintiff returned to work. During a morning meeting Defendant noticed the left side of Plaintiff's face was "sagging." Defendant encouraged Plaintiff to seek medical treatment, at which time Plaintiff directly asked Assistant Construction Manager Jerrod Darnold to seek treatment under Defendant's Workers' Compensation policy as is his protected right. Mr. Darnold specifically told Plaintiff not to utilize Defendant's workers' compensation policy or even mention his injury occurred on the job site when he sought treatment. Instead, Mr. Darnold directed Plaintiff to tell his treating medical professionals that Plaintiff simply "got hot at his house."

25. Plaintiff took June 23, 2017, off from work to recover and over the next few days Plaintiff sought medical treatment. Plaintiff was initially diagnosed with Syncope; a medical term for fainting.

26. On June 26, 2017, Plaintiff returned to work and requested the reasonable accommodation of performing "ground work" so he did not have to work in elevated positions.

27. While Defendant did attempt to accommodate Plaintiff by assigning him "ground work," it continued to fail to provide a safe and cool place where Plaintiff and other employees could escape the heat and properly cool off. The only place for employees to take breaks remained the onsite trailer which ranged from 95 to 105 degrees inside.

28. Plaintiff's symptoms persisted and after further medical evaluation Plaintiff was treated for heat stroke, heat exhaustion, and weakness. Plaintiff dutifully kept Defendant abreast of his disability, medical status, and ability to work.

29. On July 5, 2017, Defendant abruptly stopped all reasonable accommodations it has previously afforded Plaintiff. Defendant's failure to accommodate Plaintiff forced Plaintiff to again work in the direct sunlight where the symptoms of his disability again became exacerbated. As evidence of Defendant's growing animus towards Defendant's disability, supervisor Jeff Schroeder commented "[Plaintiff] needed to go back to the doctor, you're just not making it." Due to his symptom exacerbation, Plaintiff once again went to the emergency room for medical care.

30. Upon information and belief Defendant could have continued to accommodate Plaintiff without incurring significant expense, difficulty, or undue hardship by assigning Plaintiff jobs at the Corpus Christi job site such as welding nozzles, welding pipes, or assigning him a crane operator position. Further, upon information and belief Defendant could have transferred Plaintiff to its Baxter Springs, Kansas location or another "cooler" job site without incurring significant expense, difficulty, or undue hardship. Defendant could have also granted Plaintiff the reasonable accommodation of sufficient time off of work to properly heal before returning. However, Defendant refused to accommodate Plaintiff.

31. Plaintiff was seen again by a doctor on July 7, 2017 and was released back to work on July 8, 2017.

32. Defendant notified Plaintiff that it would arrange for Plaintiff to be seen by a physician on July 10, 2017. However, there was no appointment made. Defendant then labeled Plaintiff a "liability" due to his disability and told Plaintiff that he was attending "too many doctors' appointments." On July 11, 2017, Defendant terminated Plaintiff due to his disability, in

6

retaliation for instituting a workers' compensation proceeding by notifying Defendant of his injury, and in retaliation for requesting reasonable accommodations.

33. Plaintiff has been injured by Defendant's illegal conduct.

### Count I: Disability Discrimination under the ADA

34. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-33 above.

35. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA. Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

36. Plaintiff was able to perform the essential functions of his job at the time of his termination.

37. Defendant is prohibited under the ADA from discriminating against Plaintiff because of his disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

38. Defendant violated the ADA by unlawfully terminating and discriminating against Plaintiff based on his disability.

39. Plaintiff has been damaged by Defendant's illegal conduct.

40. Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

41. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

42. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling him to punitive damages.

### Count II: Retaliation under the ADA

43. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-33, above.

44. Defendant intentionally retaliated against Plaintiff for engaging in protected activity when Plaintiff requested reasonable accommodations under the ADA by terminating his employment.

45. Defendant's conduct violates the ADA.

46. Plaintiff has satisfied all statutory prerequisites for filing this action.

47. Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

48. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

49. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling him to punitive damages.

### Count III: Disability Discrimination under the Texas Labor Code §§ 21.001 *et seq.*

50. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-33, above.

51. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the TWC.

52. Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

53. Defendant is prohibited under the TWC from discriminating against Plaintiff because of his disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

54. Defendant violated the TWC by unlawfully terminating and discriminating against Plaintiff based on his disability.

55. Plaintiff has been damaged by Defendant's illegal conduct.

56. Defendant's discriminatory conduct, in violation of the TWC, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

57. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

58. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's rights, thereby entitling him to punitive damages.

### Count IV: Retaliation in Violation of the Texas Labor Code §§ 451.001 *et seq.*

59. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-33, above.

60. Plaintiff took an affirmative, good faith step towards instituting a workers' compensation claim when he notified Defendant of his on the job injury.

61. Plaintiff further notified Defendant of his intent to file a workers' compensation claim when he discussed requesting medical treatment under Defendant's workers' compensation policy with Mr. Darnold.

62.     In retaliation for the affirmative, good faith step towards instituting a workers' compensation claim, Defendant terminated Plaintiff.

### Count V: Negligence

63.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-33, above.

64.     Plaintiff and Defendant were in an employee-employer relationship.

65.     Defendant owed Plaintiff a duty to use ordinary care in providing a safe work place.

66.     Defendant breached its duty to Plaintiff when it only permitted employees to take limited and occasional five-minute breaks and one 30-minute lunch break, provided water stored on pallets kept in the direct sunlight causing the water to taste of chlorine and become undrinkable due to prolonged sun exposure, and only provided a trailer located on site which was as hot inside as the temperature was outside for employees to cool off.

67.     Defendant's breach of its duty to use ordinary care in providing Plaintiff a safe work place caused Plaintiff damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a)     Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, liquidated damages, and prejudgment interest thereon;

b)   Grant Plaintiff his costs and an award of reasonable attorneys' fees (including expert fees); and

c)   Award any other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:

*/s/ Gabrielle E. Klepper*
Gabrielle E. Klepper
Texas Bar No.: 24090213
Abby Salzer
(admitted *pro hac vice)*
Spielberger Law Group
4890 W. Kennedy Blvd., Ste. 950
Tampa, Florida 33609
T: (800) 965-1570 ext. 126
F: (866) 580-7499
Gabrielle.Klepper@spielbergerlawgroup.com
Abby.Salzer@spielbergerlawgroup.com

*Counsel for Plaintiff*